| | |
|---|---|
| GARY B. MARTINEZ,<br><br>Plaintiff<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 2:17-cv-05649-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

## I. PROCEDURAL HISTORY

Plaintiff filed a complaint seeking review of the decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 9 and 20] and briefs addressing disputed issues in the case [Dkt. 13 ("Pl. Br."), Dkt. 18 ("Def. Br."), and Dkt. 19 ("Pl. Rep.").] The Court has taken the parties' briefing under submission without oral argument. For the reasons discussed below, the Court finds that this matter should be remanded.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

In October 2013, Plaintiff filed an application for DIB, alleging disability beginning on May 22, 2013. [Dkt. 12, Administrative Record ("AR") 27, 173-74.]

After Plaintiff's application was denied at the initial level of review, Plaintiff requested a hearing. [AR 27, 119-24.] A hearing was held before Administrative Law Judge James P. Nguyen ("the ALJ") on November 2, 2015. [AR 50-103.] On January 21, 2016, the ALJ issued an unfavorable decision. [AR 27-37.]

The ALJ applied the five-step sequential evaluation process to find Plaintiff not disabled. *See* 20 C.F.R. § 404.1520(b)-(g)(1). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date. [AR 29.] At step two, the ALJ found that Plaintiff suffered from the severe impairments of cervical and lumbar strain/sprain, obesity, schizoaffective disorder depressed type, generalized anxiety disorder, panic disorder without agoraphobia, major depressive disorder with psychosis, schizophrenia, and psychotic disorder. [*Id.*] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix I of the Regulations, ("the Listings"). [AR 30]; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1. Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a range of light work (20 C.F.R. § 404.1567(b)), including the ability to understand, remember and carry out simple job instructions and maintain attention and concentration to perform simple, routine, and repetitive tasks. [AR 30.] The ALJ also found that Plaintiff could work in environments with occasional changes to the work setting and occasional work-related decision making, interact with the general public occasionally, and climb ramps and stairs, balance, stoop, kneel, crouch, crawl, and interact with coworkers and supervisors frequently, but Plaintiff was precluded from climbing ladders, ropes, and scaffolds and working at unprotected heights. [AR 30.] At step four, the ALJ found that Plaintiff was not able to perform his past relevant work. [AR 35-36.] At step five, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy, including representative occupations such as stock checker, garment folder, and marker. [AR 36.]

The Appeals Council denied review of the ALJ's decision on June 1, 2017. [AR 1-4.] This action followed.

Plaintiff raises the following issues challenging the ALJ's findings and determination of non-disability:

1. The ALJ failed to properly weigh the medical evidence and failed to properly determine Plaintiff's RFC.
2. The ALJ failed to properly evaluate Plaintiff's subjective symptom testimony.
3. The ALJ presented a flawed hypothetical to the vocational expert.
4. The Appeals Council failed to properly consider new evidence.

[Pl. Br. at 1-18; Pl. Rep. at 1-2.] Plaintiff requests reversal and remand for payment of benefits or, in the alternative, remand for further administrative proceedings. [Pl. Br. at 18; Pl. Rep. at 2.]

The Commissioner asserts that the ALJ's decision should be affirmed, or in the alternative, remanded for further development of the record. [Def. Br. at 15-16.]

### III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal quotation marks and citations omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012). However, the Court may review only the reasons

stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

## IV. DISCUSSION

In one of his claims of error, Plaintiff contends that the ALJ failed to provide sufficient reasons for rejecting his testimony concerning his symptoms and work-related limitations. [Pl. Br. 10-13.]

Once a disability claimant produces evidence of an underlying physical or mental impairment that could reasonably be expected to produce the symptoms alleged and there is no affirmative evidence of malingering, the ALJ must offer "specific, clear and convincing reasons" to reject the claimant's testimony concerning the severity of his or her symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678-79 (9th Cir. 2017) (citation omitted); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ must specifically identify the testimony that is being rejected and discuss the evidence that undermines that testimony. *See Treichler v. Comm'r, Soc. Sec. Admin.*, 775 F.3d 1090, 1102-03 (9th Cir. 2014); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *see also Trevizo*, 871 F.3d at 679, n.5 (clarifying that "assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of a claimant's symptoms . . . ,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness") (quoting Social Security Ruling 16-3p). If the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the Court's role to "second-guess" it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

In May 2013, Plaintiff was involuntarily hospitalized for three days, due to

4

auditory hallucinations, paranoia, and suicidal thoughts. [AR 33, 333-34.] Plaintiff was diagnosed with psychotic disorder NOS and was prescribed medication (Zyprexa) to treat his symptoms. [AR 334.]

In November 2013, Plaintiff reported in an exertion questionnaire that he suffers from schizophrenia associated with significant symptoms and limitations. [AR 222-24.] Plaintiff described problems with cognition, focus and concentration, memory, thought blocks, anxiety, paranoia, racing thoughts, nausea, fatigue, and tiredness. [AR 222-24.] Plaintiff also indicated he has trouble waking up in the morning, communicating with others, and finishing tasks. [AR 224.]

In April 2014, Plaintiff filed a request for reconsideration indicating that he was unable to perform simple jobs, because he has difficulty focusing and concentrating, has difficulty waking up some mornings, and experiences stress-induced symptoms such as hallucinations, delusions, and anxiety tremors. [AR 237-40.] Plaintiff stated that his medication helps to reduce his symptoms, but it does not eliminate them. [AR 237.]

At his hearing in November 2015, Plaintiff described ongoing problems with memory, focus, racing thoughts, disordered thinking, thought blocks, anxiety, depression, stress, fatigue, communication, repetitive thoughts, and audio hallucinations. [AR 56, 58, 60-65, 70, 73, 89-93.] Plaintiff testified that he has good days and bad days, but his symptoms intensify with fatigue and lack of sleep. [AR 87, 93.] Plaintiff explained that while medication (Zyprexa) helps his condition, his symptoms are only 60 to 70 percent controlled. [AR 65, 67-68, 89-93.]

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of Plaintiff's alleged symptoms and limitations, but the medical record did not support the severity of Plaintiff's alleged symptoms and limitations beyond those set forth in Plaintiff's RFC assessment. [AR 30-31, 35.] In support of this adverse determination, the ALJ asserted: (1)

5

"[t]he overall treatment notes reflect improvement and mental stability with proper medication adherence," and (2) Plaintiff's "self-reported activities of daily living are inconsistent with his allegations of disability." [AR 31-35.]

### A. Treatment Records

An ALJ may discount a claimant's testimony when it contradicts evidence in the medical record. *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). However, when a claimant presents mental health issues, "it is error to reject [his] testimony merely because symptoms wax and wane in the course of treatment." *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id.* To satisfy the clear and convincing standard, an ALJ must explain how periods of temporary well-being or specific examples of improvement "*in fact* constitute examples of a broader development*" in the course of a claimant's mental health treatment. *Id.* at 1018 (emphasis in original); *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (a claimant's "treatment records must be viewed in light of the overall diagnostic record").

Here, the ALJ relied on some of Plaintiff's treatment notes from Advances and Breakthroughs in Mental Health ("Advances") and Pacifico Clinic El Camino ("Pacifico") to show that Plaintiff's mental condition had improved or was stable with the use of medication. [AR 31-33, 35, 373-74, 381, 466, 469, 474, 542, 551-52, 595, 612-13, 616-17.] However, when read as a whole, Plaintiff's treatment records do not undermine his testimony. Although the ALJ identified isolated instances of improvement, the records from Advances and Pacifico show that Plaintiff continued to suffer from significant symptoms and limitations. *See Garrison*, 759 F.3d at 1017 ("Reports of improvement in the context of mental health issues must be interpreted with an understanding of the patient's overall well-

6

being and the nature of her symptoms."); *see also Punzio v. Astrue*, 630 F.3d 704, 710 (9th Cir. 2011) ("[A] person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition."); *Delegans v. Colvin*, 584 Fed. App'x 328, 330-31 (9th Cir. 2014) ("An ALJ may not single out moments of good health to discredit a claimant, especially in cases involving mental impairments, which often present episodically."). For example, the ALJ cited to three of Plaintiff's treatment records from Advances, which indicated that Plaintiff had gone to the movies and played basketball with friends in August 2013, continued to improve on medication and felt generally better in September 2013, and had increased activities of daily living and markedly reduced thought blocking in October 2013. [AR 31, 373-74, 381.] However, other treatment records from Advances that were not cited by the ALJ indicate that Plaintiff suffered ongoing mental problems that never fully resolved with medication. [AR 65, 67-68, 89-93.] Notably, in July 2013, Plaintiff reported that he had a breakdown, was feeling anxious and sad, and had brief thoughts of hurting someone he loved. [AR 420.] In September 2013, Plaintiff was having difficulty expressing his thoughts into speech. [AR 403.] And in October 2013, Plaintiff was sad, anxious, depressed and experiencing thoughts of suicide. [AR 384, 391.] Similarly, the treatment records from Pacifico suggest periods of temporary well-being rather than examples of "broader development" or overall improvement. *See Garrison*, 759 F.3d at 1018; [AR 32-33, 466, 469, 474, 542, 551-52, 595, 612-13, 616-17.] Pacifico records from December 2014 through July 2015 that were not cited by the ALJ reveal that Plaintiff suffered from depression, sad moods, anxiety, feelings of worthlessness, restlessness, difficulty concentrating and focusing on tasks, suicidal ideation, paranoid delusions, audio hallucinations, communication problems, forgetfulness, poor sleep, and repetitive, disordered, distorted, racing, and random thoughts. [AR 539, 542, 547, 560, 562, 568, 572, 582-84, 586.] Further, in July 2015, Plaintiff's treating psychiatrist at Pacifico

7

assessed Plaintiff with numerous moderate and moderate-to-marked limitations in mental functioning. [AR 512-16.] Thus, despite some signs of improvement with medication, the treatment records show that Plaintiff continued to frequently experience significant symptoms from his mental impairments.

As the treatment records on which the ALJ relied are not indicative of Plaintiff's overall mental condition, they do not provide a specific, clear, and convincing basis for discounting Plaintiff's testimony. *See Garrison*, 759 F.3d at 1018; *Ghanim*, 763 F.3d at 1164.

### B. Daily Activities

The ALJ found that Plaintiff's testimony was inconsistent with his self-reported daily activities, which included driving, bathing, getting dressed, performing household chores, shopping, cooking, paying bills, handling cash, going out, reading, watching movies, swimming, playing basketball, and using a computer. [AR 35.] The ALJ also noted that Plaintiff volunteers at a hospital once a week, occasionally goes door to door with members from his church to talk to people about his faith, and exercises regularly by walking on a treadmill, riding a stationary bike, or walking outside for two to three miles. [AR 35.] Plaintiff's admitted activities do not justify rejection of Plaintiff's testimony.

First, the ALJ's general statement about Plaintiff's activities fails to specify which of Plaintiff's daily activities conflict with which aspects of his testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). Merely generally referencing Plaintiff's daily activities was insufficient to establish a conflict with Plaintiff's testimony. *See Orn*, 495 F.3d at 639; *Lester*, 81 F.3d at 834 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").

Second, the ALJ mischaracterized Plaintiff's statements regarding several of his activities. For example, although Plaintiff is able to drive, Plaintiff testified that he has not driven since he got sick, as his doctors advised him not to drive. [AR 35,

56.]  And, while Plaintiff volunteers at a hospital for about four hours a week, he testified that he experiences thought blocks, which make it difficult to stay focused on tasks, answer questions over the phone, and communicate with people.  [AR 60-62, 80.]  Plaintiff also testified that he does not have to perform tasks if he thinks they are too difficult and he can cancel his volunteer work at the hospital if he feels tired or needs to sleep.  [AR 62, 76.]  Finally, although Plaintiff testified that he goes door to door with members from his church for about two hours a week, he also stated that he feels anxious and does not enjoy the activity, because he has trouble remembering the presentations and difficulty talking to people.  [AR 62-63, 70.]  Thus, the ALJ failed to address a number of limiting factors when recounting some of Plaintiff's activities.

Third, the record does not show that Plaintiff's daily activities, as he described them, are inconsistent with his testimony about his mental impairments and limitations.  [AR 35.]  "[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."  *Reddick*, 157 F.3d at 722 (holding that "[o]nly if the level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [the claimant's] credibility") (citations omitted).  Plaintiff's activities such as bathing, dressing, performing some household chores, shopping, cooking, paying bills, handling cash, going out alone, reading, watching movies, swimming, playing basketball, using computers, exercising daily, and volunteering are not necessarily inconsistent with the mental health symptoms and limitations Plaintiff described in his testimony, such as hearing voices, having difficulty focusing, needing to sleep 12 to 14 hours a day, and suffering from thought blocks, racing thoughts, memory problems, repetitive thoughts, and fatigue.  [AR 35, 55, 58, 60-64, 80-85, 90-93]; *see Garrison*, 759 F.3d at 1016 (warning that ALJs must be cautious in concluding that daily activities are inconsistent with a claimant's testimony, "because impairments that would unquestionably preclude work and all the pressures of a

workplace environment will often be consistent with doing more than merely resting in bed all day"); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer."). Thus, the ALJ erred in concluding that Plaintiff's testimony was undermined by his daily activities.

In sum, the ALJ did not offer specific, clear, and convincing reasons for discounting Plaintiff's testimony concerning his mental impairments and limitations.

## V. CONCLUSION

When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler*, 775 F.3d at 1099. But the Court does have discretion to make a direct award of benefits under the "credit-as-true" rule, which asks whether: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Each part of this three-part standard must be satisfied for the Court to remand for an award of benefits, *id.*, and it is only the "unusual case" that meets this standard, *Benecke*, 379 F.3d at 595. Moreover, if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," a court must remand for further proceedings "even though all conditions of the credit-as-true rule are satisfied." *Garrison*, 759 F.3d at 1021; *see also Leon*, 880 F.3d at 1045 ("an award under [the credit-as-true] rule is a rare exception, and

the rule was intended to deter ALJs from providing boilerplate rejections without analysis"); *Brown-Hunter*, 806 F.3d at 495 ("The touchstone for an award of benefits is the existence of a disability, not the agency's legal error.").

This case does not present one of the rare or unusual circumstances in which an order for the immediate award of benefits would be appropriate. The ALJ's findings regarding Plaintiff's subjective symptom testimony were inadequate, but Plaintiff's entitlement to benefits remains unclear. Further administrative proceedings would be useful to allow the ALJ to fully evaluate the extent to which Plaintiff's mental impairments limit his ability to work. *See Garrison*, 759 F.3d at 1020; *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (remand for further proceedings is appropriate when the record is not "fully developed"). Therefore, remand for further administrative proceedings is warranted. On remand, the ALJ should conduct a review of the entire record in a manner that is consistent with the Court's findings.[1]

**IT IS SO ORDERED.**

DATED: October 10, 2018

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

---

[1] Because this matter is being remanded for further administrative proceedings and consideration of Plaintiff's subjective symptom testimony, the Court declines to reach the remaining issues raised by Plaintiff. Nevertheless, the ALJ should consider Plaintiff's additional contentions of error when evaluating the evidence on remand.

11